### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**DR. DAVID BRUCE ALLEN**                                                                 **PLAINTIFF**

**v.**                                                              **Civil No. 1:12-cv-57-HSO-RHW**

**JACKSON COUNTY, MISSISSIPPI,** *by and*
*through its Board of Supervisors*,
**MIKE BYRD,** *Sheriff, in his*
*individual capacity, and*
**UNKNOWN JOHN AND JANE DOES A-Z,**
*in their official and individual capacities*                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION [34] FOR RECONSIDERATION, DENYING DEFENDANT'S MOTION [38] TO STRIKE PLAINTIFF'S MOTION FOR RECONSIDERATION, AND GRANTING DEFENDANT'S MOTION [28] FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

BEFORE THE COURT are three Motions: (1) a Motion [28] for Summary Judgment Based on Qualified Immunity, filed by Defendant Mike Byrd, the Sheriff of Jackson County, Mississippi; (2) Plaintiff Dr. David Bruce Allen's Motion [34] for Reconsideration of Denial of Extension of Time to File a Response to Sheriff Byrd's Motion for Summary Judgment; and (3) Sheriff Byrd's Motion [38] to Strike, or in the Alternative, Response in Opposition to Plaintiff's Motion for Reconsideration. Having considered the parties' Motions, their respective opposition and rebuttal briefs, the record, and relevant legal authorities, the Court finds that Dr. Allen's Motion [34] for Reconsideration should be denied, Sheriff Byrd's Motion [38] to Strike should be denied, and Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity should be granted. There is no excusable neglect for Dr. Allen's three-and-a-half-month-late Response [34-2] to Sheriff Byrd's Motion for Summary Judgment.

Because the Response does not alter the Court's conclusion, the Court has nevertheless considered the Response.

# I. BACKGROUND

A.   Introduction

Dr. David Bruce Allen ("Dr. Allen") was imprisoned for fourteen months while awaiting trial on six State criminal charges. At his February 2011 criminal trial, four counts were dismissed on directed verdict, and the jury could not reach a unanimous verdict on the remaining two counts. On February 22, 2012, Dr. Allen commenced this civil action against Jackson County, Sheriff Mike Byrd in his individual capacity, and numerous "unknown John and Jane Does" in their official and individual capacities, contending that he was unlawfully arrested and imprisoned. Pl.'s Compl. [1].[1]  In his Amended Complaint [8] filed on March 13, 2013, Dr. Allen asserts claims pursuant to 42 U.S.C. §§ 1982, 1983, 1985, 1986, and state law. Pl.'s Am. Compl. [8] at 1-2, 9-10. Dr. Allen seeks $551,000,000 in damages in addition to attorneys' fees and expenses. *Id.* at 11. Liberally construing Dr. Allen's rather unclear pleadings, he asserts a Fourth Amendment false arrest claim and Fourteenth Amendment due process claim against Sheriff Byrd.

Dr. Allen's constitutional claims against Sheriff Byrd in his individual capacity are the subject of the instant Motion [28] for Summary Judgment Based on Qualified Immunity. The only discovery that has occurred so far in this case

_____

[1]The Jackson County Board of Supervisors, the Jackson County Sheriff's Department, the Jackson County Narcotics Task Force, and Sheriff Byrd in his official capacity have been dismissed as Defendants. Order [20].

pertains to the issue of qualified immunity.

B.   <u>Factual Background</u>

For fourteen years, Dr. Allen was a cardiac surgeon practicing and residing in Jackson County.  Dep. of David Allen [28-2] at 10, 64.  Dr. Allen moved to California in 2008 and in 2009 began a medical cannabis evaluation practice in California.  *Id.* at 7-8, 14.  Dr. Allen owns a forty-eight acre piece of property in Jackson County, which is referred to as "Blue Hole."  *Id.* at 14.

On February 19, 2009, shortly after Dr. Allen moved to California, agents of the Narcotics Task Force of Jackson County executed a search warrant on Blue Hole searching for evidence of marijuana cultivation.  Pl.'s Resp. [34-2] at 10; Dep. of David Allen [28-2] at 87.[2]  Dr. Allen was in California at the time, but his sister Gail Lee and brother-in-law Rodney Lee resided at Blue Hole and were present during execution of the search warrant.  Am. Compl. [8] at 4.  Dr. Allen telephoned Blue Hole during the search.  Officer Jackie Trussell, who led the Task Force's criminal investigation of Dr. Allen, "answered the phone and said he was serving a search warrant for a marijuana manufacturing facility."  Dep. of David Allen [28-2] at 87.  Dr. Allen responded, "well you didn't find any plants."  *Id.*  Beyond this information, the Court has not been apprised of what  was or was not found during execution of the search warrant.

Dr. Allen also spoke on the telephone to Lieutenant Curtis Spiers, the Task

---

[2]At the time of the events relevant to this lawsuit, the Narcotics Task Force of Jackson County was comprised of officers from the four municipalities in Jackson County and officers from the Jackson County Sheriff's Department.  Dep. of Curtis Spiers [34-8] at 9; Dep. of Mike Byrd [34-3] at 8, 14-15.

Force's commander, during execution of the search warrant. Both Officer Trussell and Lieutenant Spiers advised Dr. Allen that he should return to Mississippi to face charges or otherwise face extradition. Pl.'s Resp. [34-2] at 18. According to Dr. Allen, Lieutenant Spiers told him that he "would not like extradition." *Id.* Lieutenant Spiers testified at his deposition that he explained to Dr. Allen that "if he would come turn himself in, it would be much better than him getting caught out there and getting locked up in an Alameda County jail and then us having to extradite him across the country." Dep. of Curtis Spiers [34-8] at 49.

Dr. Allen testified at his deposition that his sister Gail Lee told him that the Narcotics Task Force agents acted like "hoodlums" during execution of the search warrant, "playing pool, and ping pong, and foosball in [his] home," burning a "bunch" of property in his front yard, roughing up Rodney Lee, tasing the dog, whistling tunes "in a manner of intimidation," and joking and laughing about how they were going to seize Blue Hole and use it as their training facility and a vacation spot. Dep. of David Allen [28-2] at 34-36, 88. Because Dr. Allen was in California at the time, he has no personal knowledge that such behavior occurred, and he has submitted no testimony from anyone who was present during execution of the search warrant.[3]

Dr. Allen deposed two witnesses during discovery in this matter, Sheriff Byrd and Lieutenant Spiers. Neither of these individuals were present during execution of the search warrant. Dep. of Mike Byrd [34-3] at 12; Dep. of Curtis Spiers [34-8] at 12. The record contains no affidavits or testimony from Gail Lee, Rodney Lee, or Officer

---

[3]Dr. Allen has acknowledged that, "now, I wasn't there, so all I know is secondhand reports." Dep. of David Allen [28-2] at 35.

Trussell.  The record furthermore contains no portion of the transcript from Dr.

Allen's criminal trial.  Lieutenant Spiers, however, did testify at his deposition that

he learned after execution of the search warrant that "a cabinet that was used as part

of the grow room . . . was destroyed" by the Narcotics Task Force.  Dep. of Curtis

Spiers [34-8] at 12.  Sheriff Byrd also acknowledged during his deposition that he

heard officers make "cop jokes" about using Blue Hole for police training.  Dep. of

Mike Byrd [34-3] at 27-28, 31.

At some point, Gail and Rodney Lee were arrested.  The record is unclear as to

when this occurred and what charges were asserted against the Lees.  Rodney Lee

may have been arrested at the time of the raid.  Dep. of Curtis Spiers [34-8] at 18.

Gail Lee was arrested at least one day after the raid, or as late as March 13, 2009.

Am. Compl. [8] at 5; Dep. of David Allen [28-2] at 21-22, 36, 89; Dep. of Curtis Spiers

[34-8] at 18, 23-24.  Dr. Allen contends that Gail and Rodney Lee were threatened

with 30 years in prison, placed in solitary confinement for five days in stark and

unsanitary conditions, and "advised that their only hope was to give testimony

against Dr. Allen."  Am. Compl. [8] at 5.  Dr. Allen alleges that

> [e]ventually, after many days of torture, [Gail Lee] had a
> mental break down and started screaming that she would say
> whatever they wanted.  She did.  Further, her husband . . .
> agreed to do the same.  In exchange for their statement, the
> threat to incarcerate them for 30 years was dropped and all
> charges against them were dropped.

*Id.* at 5-6.

Lieutenant Spiers acknowledged that the charges against Gail Lee were

dropped as a result of her cooperation with the Narcotics Task Force's investigation

and the District Attorney.  Dep. of Curtis Spiers [34-8] at 24.  Dr. Allen has not,

however, offered evidence in support of his conclusory allegation that the Lees'

testimony was secured through unlawful coercion, threats, and torture.  It is

undisputed that the Lees testified against Dr. Allen at his criminal trial.  Mot. for

Entry of Nolle Prosequi [34-6] at 2.  There is no evidence that Dr. Allen challenged

the admissibility of their testimony.

On February 27, 2009, a judge with the County Court of Jackson County

issued arrest warrants for Dr. Allen on two charges: felony cultivation of marijuana

and transfer of hashish.  Arrest Warrants [28-2].  The Arrest Warrants were

supported by Affidavits of Officer Trussell in which he generally averred that Dr.

Allen had committed the charges alleged.  *Id.*  After learning of the arrest warrants,

Dr. Allen turned himself in to authorities in California on March 17, 2009.  Dep. of

David Allen [28-2] at 21-22.

On March 19, 2009, an article was published in the media regarding Dr. Allen's

arrest.  A photograph of numerous full-grown marijuana plants appeared with the

article and was captioned, "[m]arijuana found at residence."  Article [34-4, 34-5].  "No

actual grown marijuana" was found at Blue Hole.  Motion for Entry of Nolle Prosequi

[34-6] at 2.  It is undisputed that Lieutenant Spiers supplied the media with the

photograph.  Dep. of Curtis Spiers [34-8] at 28.  Dr. Allen characterizes Lieutenant

Spiers' act of doing so as fabrication of evidence.  Pl.'s Resp. [34-2] at 10-11.

Lieutenant Spiers testified that he was contacted by the media and asked for

photographs from the raid on Blue Hole.  Dep. of Curtis Spiers [34-8] at 28.

According to Lieutenant Spiers, "I had no photographs because they were currently

on the scene, and was asked if I could give them some generic photos or generic photo of marijuana growing, which in turn, I did. . . . I never represented [it] as being evidence from Dr. Allen's case." *Id.*

Dr. Allen was extradited from California to Mississippi by a private extradition service, Atlantic Extradition Service. Dep. of David Allen [28-2] at 22, 38; Pl.'s Resp. [34-2] at 12, 18-19. No Jackson County law enforcement officers were present during the extradition. Dep. of David Allen [28-2] at 10, 39-40. Dr. Allen alleges that during extradition, he was "made to sit in the cargo area behind the rear seat without a seatbelt" and "in chains for five days straight." Dep. of David Allen [28-2] at 38-39. He alleges that he was "stuffed in between the other prisoners, until he was placed in the rear of the vehicle, on top of a plastic box, in a miserable position." Pl.'s Resp. [34-2] at 18. Dr. Allen believes that he was treated inhumanely during extradition because Officer Trussell was friends with the owner of Atlantic Extradition Service and Sheriff Byrd and his deputies "had influence on that trip." *Id.* at 38-40. Dr. Allen contends that Lieutenant Spier's statement to him that he "would not like extradition" supports this allegation. *Id.* at 40. Dr. Allen testified at his deposition, however, that his only support for the allegation is that "[t]he evidence was, I was treated badly and I was told before it happened, you are not going to like this. There was a threat." *Id.* Dr. Allen's subjective belief is not competent summary judgment evidence supporting the allegation that Sheriff Byrd or any other Jackson County law enforcement official "influenced" the way Dr. Allen was treated during extradition.

Dr. Allen was booked and arrested in Jackson County on April 7, 2009. Dep. of David Allen [28-2] at 54. He posted bond the same day. *Id.* While on bond, Dr.

Allen, by his own admission, approached his sister Gail Lee, gave her $200, and "tried to persuade her to come back to California with him so they could hire a lawyer and prepare a defense. . . . The conversation was recorded." *Id.* at 12.  Jackson County law enforcement arrested Dr. Allen on December 9, 2009, and charged him with two counts of tampering with a witness, two counts of attempted subornation of perjury, and two counts of attempting to influence the testimony of a witness.  Circuit Court Order [28-6].  Because the arrest was for at least one charge punishable by more than five years of imprisonment, Dr. Allen's bond was revoked, and he was detained.  *Id.* at 1 (citing Miss. Const. art. 3, § 29).

Dr. Allen filed a Motion for Writ of Habeas Corpus in the Jackson County Circuit Court alleging that his detention was illegal because he had not been indicted and no probable cause hearing had been held.  *Id.*  "[A] probable cause hearing on the charge of attempted subornation of perjury was held on December 17, 2009."  *Id.*  A Circuit Court judge found "sufficient probable cause that Dr. Allen did attempt to get Gail and Rodney Lee to commit willful and corrupt perjury in a proceeding where the witness would be legally sworn and examined."  *Id.* at 2.  Dr. Allen's Writ of Habeas Corpus was denied, and he was imprisoned for fourteen months while awaiting trial.

In January 2010, a Jackson County grand jury returned a three-count indictment against Dr. Allen for three felonies: manufacture of marijuana; possession of marijuana; and transfer of hashish.  Indictment [28-4].  A Jackson County grand jury returned a second indictment against Dr. Allen in March 2010,

charging him with three additional felonies: bribing a witness; tampering with a witness; and attempted suborornation of perjury.  Indictment [28-5].

In August 2010, Dr. Allen mailed a letter to Sheriff Byrd; Ken Broadus, the Director of the Jackson County Adult Detention Center; and many others, including a director of the Americans Civil Liberties Union.  Letter [28-2] at 118-24. According to Dr. Allen, the letter "outlin[ed] numerous violations of his constitutional rights while in the custody of the Jackson County Sheriff's Department by employees, agents, representatives and/or co-conspirators of Sheriff Byrd."  Pl.'s Resp. [34-2] at 16.  Dr. Allen does not specify what constitutional violations the letter purportedly outlined, and he does not cite to any particular portion of the letter.  Ken Broadus responded to Dr. Allen's letter on August 20, 2010.  Letter [28-2] at 113.  At his deposition, Sheriff Byrd "[did not] remember a letter regarding Dr. Allen," Dep. of Mike Byrd [34-3] at 53, but Dr. Allen contends that "Sheriff Byrd's deliberate indifference was memorialized in [Broadus's] "Inmate Response" [letter] dated 08-20-10," Pl.'s Resp. [34-2] at 16-17.

In February 2011, Dr. Allen was tried in the Circuit Court of Jackson County on the six State criminal charges: manufacture of marijuana; possession of marijuana; transfer of hashish; bribing a witness; tampering with a witness; and attempted suborornation of perjury.  Mot. for Entry of Nolle Prosequi [34-6].  After presentation of the State's case, the Circuit Court judge directed a verdict in Dr. Allen's favor on four counts, namely possession of marijuana; bribing a witness; tampering with a witness; and attempted suborornation of perjury.  *Id.*  The jury was

unable to reach a verdict on the remaining two counts of manufacture of marijuana and transfer of hashish.  *Id.*  These counts were dismissed on January 10, 2012, upon the State's Motion, which provided:

> The jury, comprised of twelve citizens from Jackson County, did not find sufficient evidence to convict the defendant, David Bruce Allen, after being presented all of the evidence by the State of Mississippi. The jury's inability to unanimously agree that there was proof beyond a reasonable doubt that David Bruce Allen committed the crimes of Manufacture of a Controlled Substance and Transfer of a Controlled Substance casts doubt on the sufficiency of the evidence in light of the fact that there is no new evidence to present at a re-trial of this matter.

> The State of Mississippi has reviewed the transcript of the February 7, 2011 trial and does not feel there would be evidence beyond a reasonable doubt to convict the said defendant in light of the fact that there was no actual grown marijuana found on the property and no evidence exists which could be offered at a subsequent trial.  Further, the alleged transfer of a controlled substance was not done in the presence of law enforcement but was based solely on the testimony of a lay witness.

Motion for Entry of Nolle Prosequi [34-6] at 2.  Upon the State's motion, the State's forfeiture petition for Blue Hole was also dismissed.  Agreed Order of Dismissal [34-9].

## II.  DISCUSSION

A.   Dr. Allen's Motion for Reconsideration and Sheriff Byrd's Motion to Strike

Plaintiff's Counsel requests reconsideration of the Court's denial of a second extension of time for Dr. Allen to respond to Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity.  Text Only Order of September 23, 2013. Dr. Allen's Response was due September 23, 2013.  Dr. Allen did not file a Response

until January 9, 2014, when he attached a proposed Response to his Motion for Reconsideration.  Sheriff Byrd has filed a Motion to Strike [38] Dr. Allen's Motion for Reconsideration [34] and alternatively, has responded to it [36].  Dr.  Allen has filed a Response [41] to the Motion to Strike and a Reply [40] in support of his Motion for Reconsideration.

Sheriff Byrd moves to strike Dr. Allen's Motion [34] for Reconsideration and its attached exhibits on grounds that "there is no authority in the federal rules for a Motion for Reconsideration" of "the Court's Denial of a Motion for Extension of Time."  Def.'s Mot. [36] at 1.  However, "[a] court has the power to revisit prior decisions of its own . . . in any circumstance . . . ."  *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988).  The Court will deny Sheriff Byrd's Motion [38] to Strike and consider the substance of Dr. Allen's Motion for Reconsideration.

Plaintiff's Counsel's indifference to the Court's scheduling orders causes the Court to expend its time resolving this unnecessary issue.  Plaintiff's Counsel has filed ten Motions for additional time in this case, and the Court has granted him seven extensions.[4]  Plaintiff's Counsel was granted one extension to respond over

---

[4]Counsel received an extension of time to serve process upon Jackson County. Mot. [3].  Dr. Allen's initial Complaint did not contain enough factual detail or sufficiently specify the constitutional violations asserted, and the Court required Dr. Allen to file an Amended Complaint within fourteen days.  Order [5].  Counsel received two extensions of time to file his Amended Complaint.  Mots. [6, 7]. He received two extensions of time to respond to Sheriff Byrd's interrogatories. Mots. [16, 17].  He received two extensions of time to complete discovery on the issue of qualified immunity. Mots. [19, 25].  Despite two extensions of the discovery deadline, Counsel propounded no written discovery. Resp. [37] at 2. He received the

Sheriff Byrd's objection and warned that no further extensions beyond September 23, 2013, would be granted.  Nevertheless, on September 23, 2013, Plaintiff's Counsel requested a second extension of time until September 27, 2013, to respond. He represented that an extension was warranted because he had undergone a root canal and oral surgery that prevented him from filing a response by September 23, 2013.  Pl.'s Mot. [33] at 1-2.  Plaintiff's Counsel submitted no proof substantiating his excuse for missing the Court's deadline, and consistent with its prior Order that no further extensions would be granted, the Court denied Counsel's request to extend his deadline to September 27, 2013.

Three and a half months later, on January 9, 2014, Plaintiff's Counsel filed the instant Motion [34] for Reconsideration and proposed Response [34-2] to Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity.  Plaintiff's Counsel submits that ruling without considering Dr. Allen's grossly untimely Response "will substantially prejudice Plaintiff's case, causing irreparable harm to Plaintiff, and would not further the interests of justice."  Pl.'s Rebuttal [40] at 3.

---

second extension of the discovery deadline based upon his representation that he had secured a witness with "boxes of apparently/potentially relevant documents . . . that in all fairness, needs to be delivered to the Defendant." Mot. [25] at 1-2. Counsel did not thereafter deliver a witness or documents to Defendants. Resp. [37] at 2. Plaintiff's Counsel's first request for an extension of time to respond to Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity was granted over Sheriff Byrd's objection based upon Plaintiff's Counsel's representation that he had numerous scheduling conflicts in other cases and was experiencing difficulty securing information pertinent to Dr. Allen's response because Sheriff Byrd had been indicted on state charges not involving Dr. Allen, creating an "explosion of information." Mot. [31]. Plaintiff' Counsel's Motion [35] to reopen discovery on the issue of qualified immunity five months after discovery had closed was denied because Plaintiff's Counsel did not demonstrate good cause for reopening discovery. Order [39].

Plaintiff's Counsel asserts that uncontrollable health issues prevented him from filing a timely response, and that he has shown "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B).  Sheriff Byrd has pointed out several problems with Plaintiff's Counsel's proffered excuse for delay.

The Court applies the factors set forth by the United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380 (1993)*,* to determine whether a party has demonstrated "excusable neglect" for failing to comply with a filing deadline.[5]  The Supreme Court in *Pioneer* recognized "a range of possible explanations for a party's failure to comply with a court-ordered filing deadline."  507 U.S. at 387.  "At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act or God or unforeseeable human intervention.  At the other, a party simply may choose to flout a deadline."  *Id.* at 387-88.  "The ordinary meaning of 'neglect' is to give little attention or respect to a matter, or . . . to leave undone or unattended especially through carelessness."  *Id.* at 388 (internal citations omitted).  "The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  *Id.* The requirement that neglect be "excusable" deters parties from "freely ignoring court-

---

[5]While *Pioneer* addressed the "excusable neglect" standard found in a bankruptcy rule, the Fifth Circuit has applied the *Pioneer* factors to "excusable neglect" standards found in Federal Rule of Civil Procedure 60(b)(1), *Silvercreek Mgt., Inc. v. Banc of Am. Secs*., *LLC,* 534 F.3d 469  (5th Cir. 2008), Federal Rule of Appellate Procedure 4(a)(5), *Halicki v. Louisiana Casino Cruises, Inc.,* 151 F.3d 465 (5th Cir. 1988), and Federal Rule of Civil Procedure 6(b), *McCarty v. Thaler,* No. 09-40091, 376 F. App'x 442, 2010 WL 1752037 (5th Cir. Apr. 30, 2010).  *Pioneer* noted that the bankruptcy rule the Court was interpreting was patterned after Rule 6(b). 507 U.S. at 391.

ordered deadlines in the hopes of winning a permissive reprieve . . . ." *Id.* at 394.  The determination of what is "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [opposing party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* The most important of the *Pioneer* factors is "the reason for the delay, including whether it was within the reasonable control of the movant." *Tuesno v. Jackson,* No. 5:08cv302-DCB-JMR, 2013 WL 685928, * 2 (S.D. Miss. Feb. 25, 2013).  An absence of prejudice to the opposing party alone is not grounds for finding "excusable neglect." *Id.* at *2 n.4.

Applying the *Pioneer* factors to the circumstances here, the Court finds that Plaintiff's Counsel has failed to show excusable neglect for submitting Dr. Allen's Response three and a half months late.  The length of delay, reason for delay, a record evidencing Counsel's indifference to the Court's scheduling orders, and the importance of deterring similar future conduct by Plaintiff's Counsel guide the Court to this conclusion.

Plaintiff's Counsel has offered records from an urgent care clinic indicating that he was diagnosed with bronchitis on November 7, 2013, and released to return to work on November 9, 2013.  Records [34-1].  Plaintiff's Counsel has not explained how records indicating that he was diagnosed with bronchitis on November 7, 2013, support the conclusion that he could not prepare a Response to Sheriff Byrd's Motion for Summary Judgment, which was due forty-five days earlier on September

-14-

23, 2013.  Furthermore, Plaintiff's Counsel's September 23, 2013, request for additional time was based upon a different representation, that he had undergone a root canal and oral surgery, not that he had bronchitis.  Plaintiff's Counsel is apparently asserting that he was "impaired due to pain and medication" for seven weeks, from September 17, 2013, to November 9, 2013, and therefore unable to prepare a response during this entire time.

The Court's records, however, show that during this same seven-week period, Plaintiff's Counsel filed three Responses [26, 40, 42] to substantive Motions in another case before this Court and the same undersigned District Judge in *Wallack v. Jackson Co., Miss.,* Civil Case No. 1:13cv103-HSO-RHW.  Counsel filed one of the Responses [26] in *Wallack* on September 25, 2013, two days after Dr. Allen's Response to Sheriff Byrd's Motion for Summary Judgment was due in this case. Plaintiff's Counsel filed two other Responses [40, 42] to substantive Motions in *Wallack* on October 18, 2013, and November 1, 2013.  Plaintiff's Counsel has filed seven Motions for extensions of time in the *Wallack* case.  Two of those Motions were filed in October 2013 and in neither did Plaintiff's Counsel represent that he needed extensions due to medical impairment.  The foregoing reflects a disturbing pattern of delay and lack of forthrightness, if not an outright effort to mislead the Court. Plaintiff's Counsel is strongly admonished to remember his duty of candor to the Court and that practice before this Court is a privilege, not a right.  *Trade-Winds Envtl. Restoration Inc. v. Stewart Dev., LLC,* No. 10-30447, 409 F. App'x 805, 808 n.3, 2011 WL 396481, *3 n.3 (5th Cir. Feb. 3, 2011).

Even if the Court were to accept Plaintiff's Counsel's representation that he

was impaired for seven weeks ending on November 9, 2013, he has not explained why he did not seek reconsideration of the Court's ruling until January 9, 2014, sixty-one days after his health issues purportedly resolved.[6]  "[T]he fact that counsel became ill does not excuse the period of time when []he was not ill." *Gibbons v. United States,* 317 F.3d 852, 855 (8th Cir. 2003); *see Tuesno,* 2013 WL 685928 at *2 (citing *Gibbons* with approval).

The neglect demonstrated here is not the type that is excusable.  Plaintiff's Counsel has engaged in a habit of seeking extensions based upon vague, unsubstantiated, and legally insufficient excuses.  The Court's deadlines are intended to prevent the type of delay, inaction, and disregard caused in this case by Plaintiff's Counsel.  *Link v. Wabash R.R.,* 370 U.S. 626, 633-34 (1962).  Indeed, the circumstances here "do not so much show excusable neglect as they show a party seeking to set his own deadlines." *McCarty,* 376 F. App'x at 444.  The Court finds that Plaintiff's Counsel's proffered excuses for failing to file a timely response were not made in good faith.  The Court forewarns Plaintiff's Counsel that similar conduct in the future may result in sanctions being imposed against him.  Dr. Allen's Motion for Reconsideration should be denied.[7]  In spite of the foregoing, the Court has nevertheless considered Dr. Allen's late Response because it does not alter the Court's conclusion that Sheriff Byrd is entitled to qualified immunity.

---

[6]A party has fourteen days to respond to a motion.  L.U. Civ. R. 7.

[7]*Pioneer* is clear that civil litigants are to "be held accountable for the acts and omissions of their chosen counsel." 507 U.S. at 396-97.  It is not an unjust penalty to hold clients responsible for the unexcused conduct of their freely-selected agent.  *Id.*

B.    Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity

1.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

2.    Qualified Immunity Standard

The Fifth Circuit Court of Appeals has recently summarized the "clearly drawn bright lines" and "rigorous background principles" of qualified immunity:

> [E]valuating qualified immunity is a two-step process, and the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity.  First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right.  A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs.  If the first step is met (i.e. the official's conduct violates an established right), the second step is to determine whether the defendant's

-17-

conduct was objectively unreasonable.  Both steps in the qualified immunity analysis are questions of law.

Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate*.  Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction and liability when they perform their duties responsibly.  The law generally disfavors expansive civil liability for actions taken while state officials are on duty because such liability can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation willy unduly inhibit officials in the discharge of their duties.  In short, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.

When deciding whether the right allegedly violated was clearly established, the court asks whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law.  Answering in the affirmative requires the court to be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.  This requirement establishes a high bar.  When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.

*Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013)(internal citations and quotations omitted).

It is well-settled that "there is no vicarious or respondeat superior liability of supervisors under § 1983."  *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 425 (5th Cir. 2006); *accord Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011)("a government official can be held liable only for his own misconduct.").  Thus a

-18-

supervisory official like Sheriff Byrd may be liable only if he (1) affirmatively participated in acts that caused a constitutional injury; (2) implemented unconstitutional policies that caused a constitutional injury; or (3) failed to supervise or train his subordinates if such failure caused a constitutional injury. *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011); *Goodman v. Harris,* 571 F.3d 388, 395 (5th Cir. 2009); *Rayne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir. 1992).

Under any theory, a supervisor can be held liable only if he acts "with deliberate indifference to the violations of others' constitutional rights." *Gates v. Tex. Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008). Deliberate indifference "is a stringent standard of fault, requiring proof that a [supervisory] actor disregarded known or obvious consequences of his action." *Porter,* 659 F.3d at 446-47. "A pattern of similar constitutional violations by untrained employees" or as a result of a particular policy "is ordinarily necessary to demonstrate deliberate indifference . . . ." *Id.* (internal quotation omitted). A plaintiff can also demonstrate deliberate indifference in the failure to adopt a policy if "it is obvious that the likely consequence of not adopting a policy will be a deprivation of constitutional rights." (citation omitted).

### 3. Dr. Allen's Fourth Amendment False Arrest Claim and Fourteenth Amendment Due Process Claim Against Sheriff Byrd Individually

In this Circuit, there is no "freestanding, clearly established constitutional right to be free from a reckless investigation" or "malicious prosecution." *Hernandez v. Terrones,* No. 09-50659, 397 F. App'x 954, 966 (5th Cir. Oct. 20, 2011). "[A] claim for harm derived from being seized focuses on the Fourth Amendment," and "a claim

for harm derived from being wrongly detained/falsely imprisoned focuses on [the Due Process Clause of] the Fourteenth Amendment." *Felter v. Brown,* 5:11cv46-DCB-RHW, 2013 WL 5503720, *6 (S.D. Miss. Oct. 2, 2013)(citing *Baker v. McCollan,* 443 U.S. 137, 142 (1979)).  To overcome the first qualified immunity prong in regard to his Fourth Amendment false arrest and Fourteenth Amendment due process claims, Dr. Allen must present competent summary judgment evidence sufficient to support the conclusion that probable cause to arrest or imprison him was lacking.

In *Baker v. McCollan,* the United States Supreme Court held:

> The Constitution does not guarantee that only the guilty will be arrested.  If it did, §1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released.   Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits."  Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.
>
> The Fourteenth Amendment does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished "without due process of law." . . . Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

443 U.S. 137 at 145-46 (internal citations omitted).

An officer who acts with malice in procuring a warrant or an indictment will not be liable if the facts supporting the warrant or indictment are put before an

impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision "breaks the causal chain and insulates the initiating party." *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir. 1982). "An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir. 1988).

In this case, a County Court judge issued warrants for Dr. Allen's first arrest, a Circuit Court judge found probable cause for Dr. Allen's second arrest which resulted in revocation of Allen's bond, a Jackson County grand jury returned two indictments against Dr. Allen on six criminal counts, and a Circuit Court judge found sufficient evidence to submit the manufacture and transfer counts to a jury. Dr. Allen contends that the independent intermediaries' findings of probable cause do not break the chain of causation and that Sheriff Byrd should be held individually liable because he conspired with others to frame Dr. Allen by manufacturing probable cause through manipulation of witnesses and fabricating evidence. Pl.'s Resp. [34-2] at 25, 27-28.

Dr. Allen alleges that "[o]n February 27, 2009, Officer Jackie Trussell prepared and presented two false affidavits to the County Court judge for the purpose of issuing arrest warrants for Dr. Allen, which falsely declared that on or about February 19, 2009, that Dr. Allen did 'willfully, unlawfully, and feloniously possess and cultivate marijuana' . . . and did 'willfully, unlawfully, and feloniously possess and Sale a Schedule I Controlled Substance (Hashish) while in possession of a Firearm.'" Pl.'s Resp. [34-2] at 10; *see* Arrest Warrants [28-3]. Dr. Allen offers no more than this bare assertion. He has not affirmatively shown, or attempted to show,

what information the County Court judge relied on beyond Officer Trussell's Affidavits on to issue the arrest warrants.  *Craig v. Dallas Area Rapid Transit Auth.,* No. 11-10805, 504 App'x 328, 332 (5th Cir. Dec. 27, 2012).  The Court does not know whether the County Court judge's decision to issue warrants for Dr. Allen's arrest was based on information obtained from execution of the search warrant, information provided by the Lees, or other information beyond the Affidavits.[8]  Dr. Allen has not demonstrated that the information presented to the County Court judge was improperly presented in a way that prevented the judge from making an objective judgment.  *Id.*  He has asserted no specific claims, much less evidence, that, for instance, Officer Trussell made misrepresentations to the County Court judge, omitted crucial facts, or otherwise prevented the judge from being fully advised of the circumstances.

Dr. Allen contends that Lieutenant Spiers' providing a photograph of marijuana plants to the media constitutes fabrication of evidence.  Accepting as true his allegation that Sheriff Byrd conspired to purposely mislead the media and the public into believing that numerous marijuana plants were found at Blue Hole, Dr. Allen does not explain how an inaccurate news article published on March 19, 2009, supports the conclusion that there was no probable cause to issue warrants for his

---

[8]It is undisputed that the Lees provided testimony unfavorable to Dr. Allen, and Dr. Allen has not adduced competent summary judgment evidence supporting his claims that the Lees' testimony was obtained through threats, coercion, solitary confinement, or torture. Whether the judge found the Lees' testimony sufficient to warrant submission of some charges to the jury is a separate issue.  Probable cause for arrest does not require proof beyond a reasonable doubt.  *Maryland v. Pringle,* 540 U.S. 366, 371 (2003).

arrest weeks earlier on February 27, 2009.  Apart from the obvious timing issue,

presenting information to the media is not the equivalent of presenting information to

a judge or grand jury.  Dr. Allen does not contend that the independent

intermediaries considered the photograph when making their probable cause

determinations.

Dr. Allen has ultimately not provided sufficient competent summary judgment

evidence demonstrating that the deliberations of the intermediaries were tainted by

acts or omissions of law enforcement.  *See Hernandez v. Terrones,* No. 09-50659, 397

F. App'x 954, 968 (5th Cir. Oct. 20, 2011)(citing *Sanders v. English,* 950 F.2d 1152,

1164 (5th Cir. 1992)); *Hand,* 838 F.2d at 1428.  Because he has not supported his

claim that Fourth and Fourteenth Amendment violations occurred, the Court does not

reach the issue of whether Sheriff Byrd could be held individually liable had such

violations occurred.[9]  Dr. Allen's Fourth and Fourteenth Amendment claims against

Sheriff Byrd in his individual capacity should be dismissed.

> ### 4.   Dr. Allen's Remaining Constitutional Claims Against Sheriff Byrd Individually

The contours of Dr. Allen's remaining claims and allegations against Sheriff

Byrd in his individual capacity are vague and inadequately briefed.  Dr. Allen

generally complains of such things as the pretrial forfeiture of his property pursuant

---

[9]Dr. Allen attempts to place Sheriff Byrd's state of mind at issue.  Dr. Allen contends that Sheriff Byrd targeted him for political gain, in order to seize his assets, and because Dr. Allen supports medical marijuana.  The test for qualified immunity, however, is solely an objective one.  *Mendenhall v. Riser,* 213 F.3d 226, 231 (5th Cir. 2000).  "[S]ubjective intent, motive, or even outright animus are irrelevant in a determination of qualfied immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law."  *Id.*

to drug forfeiture laws; the burning of a cabinet by law enforcement during execution of the search warrant on Blue Hole; jokes made by Task Force Officers about using Blue Hole as a training facility and vacation spot; the purportedly unlawful conditions of his extradition and transport between prisons; other conditions of his imprisonment; and Sheriff Byrd's recent criminal indictment on State charges and guilty plea to one federal charge in separate cases not involving Dr. Allen.  Pl.'s Resp. [34-2] at 1, 9, 13, 16-18.  Dr. Allen does not adequately explain how these acts and allegations are relevant or support a specific constitutional claim.  Dr. Allen's failure to sufficiently explain or support his allegations and brief the law regarding them constitutes abandonment.  *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994). Accordingly, all remaining constitutional claims Dr. Allen may be attempting to assert against Sheriff Byrd in his individual capacity should be dismissed.

### III.  CONCLUSION

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Dr. Allen's Motion for Reconsideration should be denied, Sheriff Byrd's Motion to Strike should be denied, and Sheriff Byrd's Motion for Summary Judgment Based on Qualified Immunity should be granted.  Dr. Allen's claims against Sheriff Byrd in his individual capacity will be dismissed with prejudice.  Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff Dr. David Bruce Allen's Motion [34] for Reconsideration of Denial of Extension of Time to File a Response to Sheriff Byrd's Motion for Summary Judgment is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Mike

Byrd's Motion [38] to Strike Dr. Allen's Motion for Reconsideration is **DENIED**.

  **IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Mike Byrd's Motion for Summary Judgment Based on Qualified Immunity is **GRANTED**. Sheriff Byrd is entitled to qualified immunity on Dr. Allen's individual capacity claims against him, and all constitutional claims against Mike Byrd in his individual capacity are dismissed with prejudice.

  **IT IS, FURTHER, ORDERED AND ADJUDGED** that the parties shall contact United States Magistrate Judge Robert H. Walker within fourteen (14) days of the date of this Order to set this case for a status conference.  Judge Walker may then consider lifting the stay and revising, as necessary, the case management order.

  **SO ORDERED AND ADJUDGED**, this the 11th day of March, 2014.

       *s/ Halil Suleyman Ozerden*
       HALIL SULEYMAN OZERDEN
       UNITED STATES DISTRICT JUDGE